UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHAWNTELL L. THOMPSON, CIVIL NO. 04-4843 (ADM/JSM)

Plaintiff,

v. REPORT AND RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant.

The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 20] and defendant's Motion for Summary Judgment [Docket No. 23]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, it is recommended that plaintiff's Motion for Summary Judgment be **DENIED** and that defendant's Motion for Summary Judgment be **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, was initially filed on July 24, 2003. Tr. 52-54 Plaintiff claims she became disabled as of May 31, 1969, due to a "learning disability." Tr. 63.

The Social Security Administration ("SSA") denied plaintiff's application initially and upon reconsideration. Tr. 28-30, 33-35. On January 23, 2003, plaintiff filed a request for a hearing by an Administrative Law Judge. Tr. 36. Plaintiff, who was

represented by legal counsel, received a hearing before Administrative Law Judge ("ALJ") Roger W. Thomas on October 23, 2003. Tr. 13, 244. Testimony was taken at the hearing from plaintiff, neutral medical expert ("ME") Mary Stevens, Ph.D., and neutral vocational expert ("VE") Robert Brezinski. Id. On February 10, 2004, the ALJ issued a decision to deny plaintiff benefits. Tr. 10, 13-22. Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council. Tr. 9. The Appeals Council denied plaintiff's request for review and upheld the ALJ's decision denying benefits to plaintiff, making the ALJ's findings the final decision of defendant. Tr. 6-8. See 42 U.S.C. § 405(g).

Plaintiff sought review of the ALJ's decision by filing the instant action with this Court pursuant to 42 U.S.C. § 405(g). The matter is now before the Court on plaintiff's Motion for Summary Judgment [Docket No. 20] and defendant's Motion for Summary Judgment [Docket No. 23].

## II. PROCESS FOR REVIEW

Congress prescribed the standards by which Social Security disability benefits may be awarded: "[t]he Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." 42 U.S.C. § 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Social Security Administration shall find a person disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). The claimant's impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§ 1382c(a)(3)(B). The impairment must last for a continuous period of at least twelve months or be expected to result in death. 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1509, 416.909.

**A. Administrative Law Judge Hearing's Five-Step Analysis**

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision. 20 C.F.R. §§ 404.909(a)(1), 416.1409(a). A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ. 42 U.S.C. §§ 405(b)(1), 1383(c)(1); 20 C.F.R. §§ 404.929., 416.1429, 422.201 et seq. To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis, requiring the ALJ to make a series of factual findings regarding the claimant's work history, impairment, residual functional capacity, past work, age, education, and work experience. See 20 C.F.R. §§ 404.1520, 416.920; see also Locher, 968 F.2d at 727. The Eighth Circuit described this five-step process in Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994), vacated on other grounds, as follows:

> The first step asks if the claimant is currently engaged in substantial gainful employment. If so, the claimant is not disabled. If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities. If not, the claimant is not disabled. If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled. The fourth step asks if the claimant's impairments prevent her from doing past relevant work. If the claimant can perform past relevant work, she is not disabled. The fifth step involves the question of whether the claimant's impairments prevent her from doing other work. If so, the claimant is disabled.

(citing 20 C.F.R. § 416.920).

**B. Appeals Council Review**

If a claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, though review is not automatic. 20 C.F.R. §§ 404.967-404.982, 416.1467-416.1482. The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon a claimant unless the matter is appealed to Federal District Court within 60 days of notice of the Appeals Council's action. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

**C. Judicial Review**

Judicial review of the ALJ's decision generally proceeds by considering the decision of the ALJ at each of the five steps. The Court is required to review the administrative record as a whole and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of plaintiff's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989) (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Johnson v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000); Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). "We

may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole." Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see also Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (same).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). "It is not my job to decide the facts anew, reweigh the evidence, or substitute my judgment for that of the Commissioner. In this regard, I 'must consider both evidence that supports and evidence that detracts from the Secretary's decision, but may not reverse merely because substantial evidence exists for the opposite decision.'" Callison v. Callahan, 3 F.3d 1210, 1186 (D. Neb. 1997) (citations omitted).

The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson, 30 F.3d at 939. The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992); Buckner, 213 F.3d at 1011; Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994). Instead, the Court must

consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin v. Apfel, 811 F.2d 1195, 1199 (8th Cir. 1987).

A claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act. See 20 C.F.R. §§ 404.1512(a), 416.912(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991). Once a claimant has demonstrated that he or she cannot perform prior work due to a disability, the burden of proof shifts to the Commissioner to show that the claimant can engage in some other substantial, gainful activity. Martonik v. Heckler, 773 F.2d 236, 238 (8th Cir. 1985).

## III. DECISION UNDER REVIEW

### A. Vocational Background

Plaintiff was 34 years old at the time of the ALJ's decision. Tr. 22, 52. She has a high school diploma in special education. Tr. 14, 69. Plaintiff has worked in the past as a hand packager, cleaner, and warehouse worker. Tr. 14, 64. Plaintiff's last job involved warehouse packing for Best Buy. Tr. 64.

### B. ALJ's Findings of Fact

The ALJ concluded that plaintiff was not entitled to disability insurance benefits under §§ 216(i) and 223 of the Social Security Act. Tr. 22. The ALJ based this decision on the following findings:

1. The claimant has not engaged in substantial gainful activity since July 24, 2002, the date of her application for supplemental security income.

2. The evidence demonstrates that the claimant is subject to borderline intellectual functioning with a learning disability in reading, mild degenerative disc disease causing mechanical and myofasical pain, and a chondral injury to the right shoulder, which are severe impairments based on the requirements of the Regulations.

3. These medically determinable impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant was born on May 31, 1969 and is 34 years old, which is a younger individual. She has a high school diploma in special education, and past relevant work as a hand packager, commercial cleaner, and warehouse worker.

6. The evidence demonstrates that the claimant retains the residual capacity to perform simple, repetitive, unskilled work involving lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting two hours and standing and/or walking six hours in an eight-hour work day, requires no over the shoulder work on the right side, no more than minimal reading, only brief and superficial contact with co-workers, supervisors and the public, and takes place in a drug-free environment.

7. The claimant is precluded by her residual functional capacity from performing any of her past relevant work.

8. Considering the claimant's age, education, and past relevant work in conjunction with her residual functional capacity, there are a significant number of jobs in the national economy that claimant could perform. Examples of such jobs include assembler, cleaner, and machine operator.

9. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

Tr. 21-22.

### C. ALJ's Application of the Five-Step Process

The ALJ made the following determinations under the five-step procedure. At the first step, the ALJ concluded that plaintiff had not engaged in any substantial gainful activity since her application and, therefore, plaintiff's application for benefits could not be denied because of work experience. Tr. 14. At the second step, the ALJ found that

plaintiff had severe impairments consisting of borderline intellectual functioning with a learning disability in reading, mild degenerative disc disease causing mechanical and myofascial pain, and a chondral injury to the right shoulder. Tr. 14-18. At the third step, the ALJ determined that the record did not establish that plaintiff was subject to any impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 18. At the fourth step, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform to perform simple, repetitive, unskilled work involving lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting two hours and standing and/or walking six hours in an eight-hour work day, requires no over the shoulder work on the right side, no more than minimal reading, only brief and superficial contact with co-workers, supervisors and the public, and takes place in a drug-free environment. Id. At the fifth step, the ALJ found that given plaintiff's RFC, she was capable of performing a significant number of jobs in the national economy, including, assembler, cleaner, and machine operator. Tr. 21

## IV. ISSUES UNDER REVIEW

In the present case, the ALJ determined that while plaintiff has a severe mental impairment, it did not meet the Listing of Impairments contained in Appendix 1, Subpart P, Regulation No. 4. In particular, the ALJ found that the evidence did not support a finding of mental retardation, given that plaintiff's IQ, coupled with her overall functioning, does not support a finding of mental retardation. Tr. 15-16.

Plaintiff disagrees with the ALJ's determination. Plaintiff asserted that she is disabled because she meets the listing requirements for mental retardation under 20

C.F.R Pt. 404, subpart P, App. 1, § 12.05C.[1] See Plaintiff's Memorandum of Law in Support of Summary Judgment at ("Pl.'s Mem.") at p. 6. Specifically, plaintiff claims that she should be considered disabled because she is mentally retarded as defined by Listing 12.05C. In this regard, plaintiff states she had a low IQ and a learning disability prior being 22; that she had a validly measured IQ between 60 and 70; and that her mental impairment, in conjunction with her physical impairments, combine to meet the listing requirement of a significant work-related limitation of function. Id. at pp. 9-10. According to plaintiff, the ALJ erred when he determined that in order to meet or equal the listed criteria of Listing 12.05, she must be diagnosed as mentally retarded. Id. at p. 6. Plaintiff maintains a diagnosis of mental retardation is not among the criteria of Listing 12.05. Id. at p. 7. Rather, if plaintiff satisfies any of the criteria of A, B, C, or D, plaintiff asserts that she has met the Listing and should be deemed disabled. Id. at pp. 7-8.[2]

---

[1] Listing 12.05C provides:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

[2] Plaintiff did not argue in her submissions to the Court that the ALJ failed to give her subjective complaints proper weight, that the residual functional capacity was incorrect, or that jobs she could perform given the RFC were not based on substantial evidence in the record. Therefore, she has waived the right to contest the ALJ's findings with respect to these issues. See Craig v. Apefel, 212 F.3d 433, 437 (8th Cir. 2000); see also Yeazel v. Apfel, 148 F.3d 910, 911-12 (8th Cir. 1998) (citing Roth v.

## V. THE LISTED IMPAIRMENT DESCRIBED AT § 12.05(C)

Plaintiff contends that she should have been declared disabled at step two of the evaluation process, because she has the "listed impairment" described at § 12.05(C) of Subpart P, Appendix 1 of the regulations. In order "to meet the Listing 12.05(C) a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and a physical or other mental impairment imposing an additional and significant work-related limitation of function." See Maresh v. Barnhart, --- F.3d ----, 2005 WL 3288021 at *2 (8th Cir. Dec. 6, 2005). While the 12.05 Listing does not require a formal diagnosis of mental retardation, the claimant must satisfy the "diagnostic description" set forth in the introductory paragraph of § 12.05, in addition to any one of the four sets of criteria. Id. at *1-2 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets of criteria [i.e., the criteria listed in § 12.05A, § 12.05B, § 12.05C or § 12.05D], we will find that your impairment meets the listing.") (emphasis added). More specifically, plaintiff must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before she reached age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In this case, the parties dispute whether ALJ's decision on all of the Listing's elements was based on the substantial evidence of the record.

On June 17, 2002, plaintiff was evaluated by Kenneth Hampton, Ph.D., L.P. Dr. Hampton found plaintiff to have an IQ of below 80, but did not check the box on the assessment form stating that he was diagnosing plaintiff with mental retardation. Tr.

---

G.D. Searle & Co., 27 F.3d 1303, 1307 (8th Cir. 1994)) (finding failure to raise an issue before this Court results in waiver of that argument).

130. Dr. Hampton stated that plaintiff's low intellectual functioning as measured by the Kaufman Brief Intelligence Test may have been a result of a learning disability, as opposed to an intellectual weakness of another kind. Tr. 127. Dr. Hampton's DSM-IV diagnoses of plaintiff was V62.89 -- Borderline Intellectual Functioning.[3]

In July 2002, plaintiff was examined by Mary Jacobsen, Psy.D., L.P., at the request of plaintiff's welfare social worker. Tr. 214. As part of the assessment, the Wechsler Intelligence Scale for Adults ("WAIS-III") was administered to plaintiff. Id. The test results showed that plaintiff had a verbal IQ score of 67, a performance IQ score of 79, and a full scale IQ of 70. Id. Dr. Jacobsen stated that plaintiff's full-scale IQ score placed her in the borderline deficient category. Tr. 215. Dr. Jacobsen also noted that while plaintiff was at the low end of the ability to perform the WAIS-III, her illiteracy and lack of proper schooling might have played a role in the low score. Id.

On August 21, 2002, plaintiff was seen for a consulting psychological evaluation. Tr. 15. At that time, Dr. Craig S. Barron, Psy.D, L.P., administered several intelligence tests, including the WAIS-III. Tr. 15, 141-47. The results showed that plaintiff had a verbal IQ score of 71, a performance IQ score of 78, and a full scale IQ of 72. Tr. 141. Dr. Barron, found that the WAIS-III score was consistent with someone who is functioning within a borderline range of intelligence. Tr. 143. Dr. Barron diagnosed plaintiff with Borderline Intellectual Functioning as well as cannabis dependence in full remission. Tr. 146. Dr. Barron also found that on the basis of plaintiff's cognitive

---

[3] V62.89 provides in relevant part: "This category can be used when the focus of the clinical attention is associated with borderline intellectual functioning, that is, an IQ in the 71-84 range." See Diagnostic and Statistical Manual of Mental Disorders 740 (4th ed. Text Revision).

capabilities, plaintiff was able to communicate, comprehend, and retain simple directions at an unskilled competitive employment level. Tr. 146.

On September 18, 2002, plaintiff was examined and her records were reviewed by James Alsdurf, Ph.D., LP, a state psychologist, who assessed plaintiff with Borderline Intellectual Functioning. Tr. 161-162, 181.

Plaintiff claims that she meets the IQ requirements for the 12.05C Listing because her IQ results from July 2002 showed she had a Verbal IQ score of 67, and a Full Scale IQ score of 70, both of which are within the "60 through 70" range described in the regulation. See Pl.'s Mem. at p. 7. The ALJ in his decision agreed with the ME that the evidence shows that plaintiff has borderline intellectual functioning and does not support a finding of mental retardation. Tr. 15-16. While the ALJ recognized that July 2002 verbal IQ score of 67, a performance IQ score of 79, and a full scale IQ of 70, was a valid measurement of her capacity at the time of the testing, the ALJ noted that the Dr. Jacobsen observed that the plaintiff's scores may have been more a reflection of plaintiff's educational shortcomings and socioeconomic background. Tr. 15, 20. In addition, the ALJ found that the August 21, 2002 verbal IQ score of 71, a performance IQ score of 78, and a full scale IQ of 72 were valid scores. Tr. 15. These scores, coupled with Dr. Jacobsen's possible explanation for the low IQ and fact that plaintiff was able to live independently and take care of her children, led the ALJ to agree with the ME's assessment that plaintiff was suffering from borderline intellectual functioning with a learning disorder in reading. Tr. 15-16.

As stated above, the ALJ concluded that the IQ measurement from July 2002 was a valid representation of the claimant's capacity at the time of the testing. Tr. 15. However, the ALJ also found that Dr. Jacobsen's observations that given plaintiff's

illiteracy, plaintiff's scores might have been considerably higher if she had the proper education and age appropriate reading capability had merit. Tr. 15. In fact, Dr. Jacobsen herself questioned the validity of the IQ scores that she reported. She pointed out that:

> [S]he is very clearly at the low end of the ability to perform according to this test. However, it must be noted that due to her near illiteracy her scores might have been considerably higher should she have the proper school learning and age appropriate reading capability. It should be noted that although this is a test of intellectual ability, much of the Wechsler scales depend of school learning. Also several of the verbal subtests are particularly influenced by a lack of cultural opportunity, low outside reading, poor reading ability, lack of richness in early environment, poor school learning, psychosocial disadvantages. All of these may apply to Shawntell, given her background.

Tr. 215.[4]

The SSA regulations expressly recognize that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.00(D)(6)(a). Dr. Jacobsen provided just the type of additional commentary that is invited by the regulations, and that commentary clearly indicates that plaintiff's bare test scores probably were not a valid representation of her true IQ level.

While Dr. Jacobsen comments alone would have supported the ALJ's assessment of the IQ test scores at issue, there are at least four other factors that

---

[4] Dr. Jacobsen's opinion is supported by Dr. Hampton's findings in June 2002 that plaintiff's low IQ may have been a result of a learning disability as opposed to an intellectual weakness of another kind. Tr. 127.

provide additional support for the ALJ's decision. First, plaintiff's other IQ test score approximately a month after her initial WAIS-III IQ test raises questions about the validity of the July 2002 scores. The August 21, 2002, WAIS-III results showed that plaintiff had a verbal IQ score of 71, a performance IQ score of 78, and a full scale IQ of 72. Tr. 141. Dr. Barron found that the WAIS-III score was consistent with someone who is functioning within a borderline range of intelligence. Tr. 143. Further, these scores, which are above 70, cast doubt on the claim that ALJ erred by not finding that plaintiff had the requisite IQ to meet the requirements under the 12.05C Listing. The possibility that the Court could draw two inconsistent conclusions from the same record does not preclude the decision from being supported by substantial evidence. See Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); see also Mitchell, 25 F. 3d at 714; Woolf, 3 F 3d at 1213. In other words, the ALJ did not commit reversible error by not finding that plaintiff did not meet the 12.05C Listing where the only two WAIS-III results in the record, done a month apart, conflicted with each other as to whether plaintiff met the IQ requirements under the 12.05C Listing.

In addition, the ALJ's findings are supported by Dr. Stevens, the medical expert who appeared at the ALJ hearing. Tr. 287-88.

It is also important to note that the four psychology experts – Dr. Hampton, Dr. Barron, Dr. Jacobsen, and Dr. Alsdurf – diagnosed plaintiff's condition as "borderline intellectual functioning," or "borderline deficient" rather than "mental retardation." Tr. 127, 146, 215, 162, 181. This is highly significant, because "[b]orderline intellectual functioning is a condition defined as an IQ score within the 71-84 range, while mental retardation is a score of about 70 or below." Hutsell v. Massanari, 259 F.3d 707, 709 n. 3 (8th Cir. 2001) (citing American Psychiatric Association, Diagnostic and Statistical

Manual of Mental Disorders, 39-40, 684 (4th ed. 1994)). Thus, by describing plaintiff's condition as "borderline intellectual functioning," all of these psychology experts were saying, in effect, that plaintiff does not have an IQ level below 70.

Finally, the ALJ noted in his determination that plaintiff was suffering from borderline intellectual functioning, that she was able to independently live and raise her children. Tr. 15-16. An ALJ may consider a claimant's daily activities in determining whether a claimant meets the listing under 12.05C, even if a there is an IQ evaluation by a non-treating psychologist that meets the IQ requirements of 12.05C. See Clark v. Apfel, 141 F.3d 1253, 1255-56 (8th Cir. 1998). The substantial evidence in the record demonstrates that plaintiff independently takes care of her three children, one of them who has been diagnosed with Attention Deficit Disorder. Tr. 86, 89, 106, 125, 145-46, 214. In addition, the record shows that plaintiff has taken care of her 18-year-old sister since age 5. Tr. 250. Further, the record demonstrates that plaintiff is able to take care of household chores and is able to maintain her finances. Tr. 89, 146. Plaintiff also engages in social activities including, going to the park, movies, the mall, fishing, visiting with family and friends, and going to school conferences. Tr. 146.

In sum, there is ample evidence supporting the ALJ's decision to find that despite the IQ scores from July 2002, plaintiff is suffering from "borderline intellectual functioning", rather than "mental retardation". Thus, the Court concludes that there is substantial evidence in the record to support the ALJ's finding that plaintiff does not meet the requirements of the "mental retardation" impairment described at § 12.05C.

## RECOMMENDATION

For the reasons set forth above, this Court finds that the decision by the ALJ to deny plaintiff disability benefits is supported by substantial evidence on the record as a whole.

THEREFORE, IT IS RECOMMENDED THAT:

1. Plaintiff's Motion for Summary Judgment [Docket No. 20] be **DENIED**; and

2. Defendant's Motion for Summary Judgment [Docket No. 23] be **GRANTED**.

Dated: January 24, 2006

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **February 10, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.