**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Shawntell Thompson,

       Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No.04-4843 ADM/JSM

Jo Anne B. Barnhart,
Commissioner of Social Security,

       Defendant.

_____

Anne S. Quincy, Esq., Law Offices of the Legal Aid Society of Minneapolis, Minneapolis, MN, for and on behalf of Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, Minneapolis, MN, for and on behalf of Defendant.

_____

## I.  INTRODUCTION

Plaintiff Shawntell L. Thompson ("Plaintiff") appeals the Defendant's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416 and 423.  This matter is now before the undersigned United State District Court Judge pursuant to Plaintiff's Objections [Docket No. 31] to Magistrate Judge Janie S. Mayeron's Report and Recommendation ("R&R") [Docket No. 28] which recommends that Plaintiff's Motion for Summary Judgment [Docket No. 20] be denied, and that Defendant's Motion for Summary Judgment [Docket No.23] be granted. This Court adopts the R&R for the reasons stated below. The procedural and factual background are incorporated from the R&R.

## II. DISCUSSION

The district court must undertake an independent, *de novo* review of those portions of the R&R to which a party objects, and "may accept, reject, or modify the recommended decision." D. Minn. LR 72.2(b).

Individuals are found to be disabled if the claimant "is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). The Plaintiff alleges an entitlement to disability benefits premised upon suffering from a mental disability under 42 U.S.C. § 1382(a). Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The severity of such disability must prevent the claimant from, "engag[ing] in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Administrative Law Judge ("ALJ") process of review requires claimants to meet a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Locher, 968 F.2d at 727. Specifically, the five-step process is as follows:

> The first step asks if the claimant is currently engaged in substantial gainful employment. If so, the claimant is not disabled. If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities. If not, the claimant is not disabled. If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled. The fourth step asks if the claimant's impairments prevent her from doing past relevant work. If the claimant can perform past relevant work, she is not disabled. The fifth step involves the question of whether the claimant's impairments prevent her from doing other work. If so, the claimant is disabled.

Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994), vacated on other grounds (citing 20 C.F.R. §416.920). A reviewing court must affirm an ALJ ruling if it is supported by substantial evidence contained in the record as a whole. 42 U.S.C. § 405(g); Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but is enough

that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000). Even if the Court could draw two inconsistent conclusions from the same record, a particular finding may be determined to be supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). Thus, as long as the evidence in support of the ALJ ruling is sufficient that a "reasonable mind" would find it adequate, the ALJ ruling must be upheld. Id.

The Plaintiff challenges the ALJ and Magistrate Judge's ruling on the third question in the five-step inquiry asking "[W]hether the impairments [of the claimant] meet or equal a listed impairment." 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.05C provides in part:

> Mental retardation: Mental retardation refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C.  A valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function.

To be classified as mentally retarded, the claimant must fit into the "diagnostic description" set forth in the introductory paragraph of § 12.05. Maresh v. Barnhart, 2006 WL 452904, *1 (8th Cir. Feb. 27, 2005). Additionally, there are two other requirements: (1) IQ scores between 60 and 70 and (2) impairments imposing "additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Applying the § 12.05C criterion, Plaintiff contends that she meets or equals the criteria for mental retardation because she had a validly measured IQ between 60 and 70, and that her

mental impairments in conjunction with her physical impairments impose, "an additional and significant work-related limitation of function." Id.

Plaintiff contends that Judge Mayeron improperly substituted her own judgment in the face of evidence that the Plaintiff is mentally retarded. Plaintiff argues the R&R is in error in (1) improperly finding that four psychologists examined and diagnosed the Plaintiff, when in fact, only two of the doctors actually tested and examined Plaintiff, (2) not finding that Plaintiff's initial IQ test scores establish mental retardation, and that Plaintiff's higher scores are explained by the "practice effect," (3) improperly finding that the claimant needs a diagnosis of mental retardation to meet the 12.05C requirements, and (4) failing to consider if the Plaintiff has a condition which equals those of the Listing Requirements.

Plaintiff's first objection focuses on the four psychologists' reports of the Plaintiff's mental capacity. Although not all of the four psychologists met and conducted testing of the Plaintiff, all four psychologists offered evaluations of Plaintiff's mental capacity in order to assist the ALJ in its task of understanding the mental functioning of the Plaintiff. The four experts consistently concluded that Plaintiff's condition constituted "borderline intellectual functioning" rather than "mental retardation." R&R at 12; Tr. 127, 146, 162, 181, 215. The fact that not all of the psychologists actually met and administered IQ tests to the Plaintiff does not discredit the finding of Dr. Stevens, the neutral medical expert, "that the claimant's overall functioning does not support a diagnosis of mental retardation." Tr. 15.

Plaintiff's second objection argues that her initial test scores meet the requirements of §12.05C and that her later test scores are explained by the "practice effect." Judge Mayeron properly considered that an IQ test administered one month after Plaintiff's initial examination placed the Plaintiff with a Verbal IQ score of 71, a Performance IQ score of 78, and a full scale

4

IQ of 72, all above the range for mental retardation. R&R at 11. Plaintiff argues the improved scores are due to the "practice effect," however, the consistent judgment of the psychologists is the reason for the variation in scores is due to Plaintiff's borderline deficient brain functioning, not mental retardation. Overall, illiteracy, lack of proper schooling, and lack of opportunity explain the Plaintiff's initially low IQ scores, and indicate the Plaintiff's initial IQ test cannot be considered a valid measure of brain functioning. R&R at 15.

Furthermore, IQ tests are not dispositive in determining if a claimant is mentally retarded. As the Eighth Circuit has observed, "An IQ test is useful in determining whether an applicant has a mental impairment, but other information in the record which indicates the individual's ability to function can be used to discredit the lone IQ score." Holland v. Apfel, 153 F.3d 620, 621-22 (8th Cir. 1998).

Here, the entirety of Plaintiff's IQ scores provide no clear indication that Plaintiff is mentally retarded. The validity of the initial scores are also called into question by Dr. Jacobsen's testimony that:

> [S]he is very clearly at the low end of the ability to perform according to this test. However, it must be noted that due to her near illiteracy her scores might have been considerably higher should she have the proper school learning and age appropriate reading capability. It should be noted that although this is a test of intellectual ability, much of the Wechsler scales depend on school learning. Also several of the verbal subtests are particularly influenced by a lack of cultural opportunity, low outside reading, poor reading ability, lack of richness in early environment, poor school learning, psychosocial disadvantages. All of these may apply to Shawntell, given her background. R&R at 13.

Given the uncertainty of the validity of her IQ test scores, other evidence including claimant's daily activities may be considered to determine Plaintiff's brain functioning and whether the claimant meets the Listing Requirements. Clark v. Apfel, 141 F.3d 1253, 1255-56 (8th Cir. 1998). The second provision of § 12.05C requires an evaluation of whether or not there

are impairments imposing "additional and significant work-related limitation of function." Id. There is extensive documentation that Plaintiff's activities demonstrate a high level of adaptive functioning, which consequently prevent her from being considered mentally retarded. R&R at 15. Plaintiff raised three children now aged 4, 12, and 16, as well as taking care of her sister from age 5 to 18. R&R at 15; Tr. at 15-16, 86, 89, 106, 125, 145-146, 214. Plaintiff takes care of household obligations, meets financial responsibilities, engages in social activities including, going to the park, movies, the mall, fishing, visiting with family and friends, and goes to school conferences. R&R at 15; Tr. at 146. The possibility that the Court could draw two inconsistent conclusions from the same record does not preclude the decision from being supported by substantial evidence. Culbertson, 30 F.3d at 939. There is substantial evidence in the evaluation of the IQ tests and Plaintiff's other activities to conclude that the claimant does not meet the Listing Requirements in § 12.05C.

Plaintiff's third objection is that the Magistrate Judge improperly required a diagnosis of mental retardation. Maresh, 2006 WL 452904 at *1. However, the Magistrate's R&R makes no such declaration and correctly concludes that requirements in the introductory paragraph of § 12.05C are mandatory, and that these requirements have not been met. R&R at 10. To meet these threshold requirements, Plaintiff must show "significantly sub-average intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [onset of such condition prior to age 22]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff relies on Maresh as supporting Plaintiff's right to receive benefits. Maresh dropped out of high school in the ninth grade and received an IQ score of 70 at age 37. Maresh, 2006 WL 452904, at *2. However, in Maresh, the Court noted that the claimant "[Was] reported [to have] 'one of the most disabling personality disorders . . . seen in . . . eleven years at the

mental health center.'"  Id. at *3.  Clearly, the condition of the claimant there had more than a "slight or minimal" effect on his ability to work, and was a significant factor in the reversal or denial of benefits to the claimant.  Id. at *4.

Here, on the other hand, the Plaintiff has successfully completed her high school diploma in special education.  R&R at 6; Tr. at 14, 69.  Plaintiff has worked as a hand packager, cleaner, and warehouse worker for Best Buy.  R&R at 6; Tr. at 14, 64.  She received an IQ score of 70 at age 34, and experienced many hardships throughout her life due to lack of opportunity, illiteracy, and other socio-economic factors.  R&R at 11-13.  Unlike Maresh, these factors were considered by four different psychologists and they concluded that Plaintiff's borderline mental functioning is not due to the onset of any adaptive disfunctioning impairment before age 22, thus preventing Plaintiff's mental state from being considered mental retardation.  R&R at 10-13.  Instead, Plaintiff's borderline mental condition was found to be the result of external life factors outside the scope of any innate adaptive functioning required to find an individual mentally retarded. R&R at 13. Also, unlike Maresh, the Plaintiff has provided no other evidence of a disabling disorder.  In fact, the only evidence of record is that the Plaintiff is able to function and live a relatively normal, routine life.  R&R at 15.  Finally, because the Plaintiff may continue to perform tasks involving "simple, repetitive, unskilled work," there is no similar adverse effect to the Plaintiff's ability to work, as in Maresh.  R&R at 7.  Thus, Plaintiff's third objection is denied.

Plaintiff's fourth objection argues for the distinction between meeting and equaling the Listing Requirements.  Plaintiff claims that if she does not meet the Listing Requirements, that her condition equals such requirements.  This argument does not appear to have been presented to the Magistrate Judge and should therefore not be considered here.  Roberts v. Apfel, 222 F.3d

466, 470 (8th Cir. 2000).  Even if this argument could be considered, Plaintiff's reliance upon Shontos v. Barnhart, 328 F.3d 418 (8th Cir. 2003); Jones v. Barnhart, 335 F.3d 697 (8th Cir. 2003); and Sird v. Chater, 105 F.3d 401 (8th Cir. 1997) is misplaced.  Those cases reversed ALJ decisions to deny claimants benefits for failure to properly consider all relevant evidence from the record.  In Shontos, the ALJ failed to consider evidence from a clinical psychologist, a treating nurse practitioner, several health care providers, and other sources, which indicated the claimant there met the Listing Requirements.  328 F.3d at 426-27.  Similarly, in Sird, the ALJ failed to consider outside evidence supporting arguments that the claimant suffered from "impairments that imposed significant work-related limitation of function."  105 F.3d at 402.  In Jones, the ALJ failed to recognize outside evidence that the claimant's impairments were not "slight or minimal."  335 F.3d at 701.

  The Plaintiff's objection misconstrues Shontos, Sird, and Jones.  There is simply no distinction between "meeting" or "equaling" the Listing Requirements discussed in any of these cases.  Although Shontos mentions situations in which claimants may *equal* the Listing Requirements, the ultimate decision still requires an evaluation of all relevant evidence to determine the mental functioning of the Plaintiff.  328 F.3d at 424-25.

  Furthermore, the holdings of all three cases only lend further support to the Magistrate Judge's finding to deny benefits.  All three cases stress consideration of all relevant evidence.  Shontos, 328 F.3d 418 at 426-27; Jones, 335 F.3d at 700-02; Sird, 105 F.3d at 402-04 (8th Cir. 1997).  There is a substantial amount of life experience evidence in this case supporting the denial of benefits.  The ALJ decided to deny benefits only after considering all relevant evidence from the record, and therefore, the ALJ's decision is supported by substantial evidence.  Thus, Plaintiff's fourth and final objection is also denied.

## III. ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections [Docket No. 31] are **DENIED**;

2. The R&R [Docket No. 28] is **ADOPTED**;

3. Plaintiff's Motion for Summary Judgment [Docket No. 20] is **DENIED**; and

4. Defendant's Motion for Summary Judgment [Docket No. 23] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 9, 2006.